**ORANGE STONES CO., Appellant**

v.

**CITY OF READING and Fred Lachat.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2014.
Decided March 21, 2014.

1016

George W. Bishop, Williamsport, for appellant.

Christine D. Steere, Media, for appellees.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

Orange Stones Company (Orange Stones) appeals the February 19, 2013 order of the Court of Common Pleas of Berks County (trial court), which sustained the preliminary objections of the City of Reading (the City) and the City's attorney Fred Lachat (Lachat),[1] (collectively, Defendants) and dismissed with prejudice Orange Stones' second amended complaint asserting claims for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations. We affirm.

### I. Facts/Procedural History

By way of background, the City filed a complaint before a magisterial district judge (MDJ) in November 2011, seeking

1. Orange Stones' complaint does not contain any averments explaining who Lachat is or detailing his involvement in the matter. However, after considering the numerous exhibits attached to the complaint, it is apparent that Lachat is the assistant solicitor who represented the City in the proceedings before the magisterial district judge (MDJ). (Reproduced Record (R.R.) at 1245a.)

civil penalties for Orange Stones' continued violations of an allegedly un-appealed enforcement notice/stop work order (Enforcement Notice) dated August 14, 2008. The Enforcement Notice stated that Orange Stones violated the City's ordinance by creating and establishing a business office without the required permit. (R.R. at 18a–22a.) In response, Orange Stones filed a cross-complaint in February 2011, averring that the Enforcement Notice was technically defective on a variety of grounds; that Orange Stones attempted to appeal the Enforcement Notice, but the City refused to accept the appeal; and that the City's complaint was vexatious, frivolous, and brought in bad faith. (R.R. at 271a–81a.) On March 21, 2012, the City voluntary withdrew its complaint against Orange Stones without stating a reason. (R.R. at 282a.)

Orange Stones' cross-complaint proceeded to disposition, and, following a hearing, an MDJ found that the City's complaint was frivolous and awarded judgment in favor of Orange Stones in the amount of $12,181.55. (R.R. at 3a.) The City then filed an appeal *de novo* to the trial court and issued a praecipe upon Orange Stones to file a complaint. (R.R. at 7a.)

On September 11, 2012, Orange Stones filed a complaint in the trial court, and an amended complaint as a matter right after Defendants filed preliminary objections. Defendants then filed preliminary objections to the amended complaint, and, on December 17, 2012, the trial court granted these objections without prejudice to Orange Stones filing a second amended complaint to address the deficiencies raised in Defendants' objections and to aver sufficient facts to support its claims. (R.R. at 957a.)

On January 14, 2013, Orange Stones filed its second amended complaint and alleged as follows. Orange Stones is a corporation located in Williamsport, Lycoming County, and does business in the City as a drug and alcohol rehabilitation facility; the City is a municipal corporation organized under the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701; and Lachat, at all relevant times, was acting as an agent and employee of the City. (R.R. at 960a.)

According to Orange Stones' second amended complaint, the City's civil complaint before the MDJ alleged that Orange Stones failed to appeal the August 14, 2008 Enforcement Notice and sought civil penalties based upon violations of the Enforcement Notice. However, the Zoning Administrator "unlawfully" refused to accept a timely, written appeal that Orange Stones' representative presented in person and via facsimile; the City's Zoning Hearing Board (ZHB) refused to hear the appeal; and the City deprived the ZHB of jurisdiction to hear the appeal by filing for an injunction in the trial court. (R.R. at 960a–62a.)

Further, Orange Stones' second amended complaint stated that the Enforcement Notice was "defective" and in violation of the ordinance at the time it was issued for numerous reasons. Namely, the Enforcement Notice was not sent to the proper owner of the property or his designee; it failed to list specific violations with citations to applicable provisions of the ordinance; it did not mandate a specific date in which the remedial measures must be completed; and it did not include a provision required by the ordinance directing that continued non-compliance could result in civil remedies. (R.R. at 960a.)

Finally, Orange Stones' complaint alleged that the City's complaint before the MDJ was "improper" on the ground that the complaint sought civil penalties for each day of the alleged violation, whereas

the ordinance only permits a judgment of not more than $500. Also, the City's complaint was barred under the doctrine of laches, which, allegedly, only allows the filing of an action within two years of the purported violation and the City waited over three years. (R.R. at 962a.)

Based upon these averments, Orange Stones asserted that Defendants "acted with actual malice and willful misconduct in order to impair [Orange Stones'] ability to operate at the subject property." (R.R. at 963a.) Orange Stones alleged that Defendants "maliciously filed a complaint which they knew to be frivolous and not based in fact in order to shut down [Orange Stones'] business and in order to impede its ability to service its clientele." (R.R. at 963a.) On these grounds, Orange Stones stated claims for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations.

With respect to the wrongful use of civil proceedings claim, Orange Stones averred that Defendants engaged in willful misconduct when they filed the complaint before the MDJ without probable cause and/or based upon an inadequate investigation which would have revealed a meritless Enforcement Notice. (R.R. at 964a–96a.)

In regards to the abuse of process claim, Orange Stones contended that Defendants improperly used the proceedings before the MDJ to force Orange Stones to shut down its operations, which is not a legitimate object of the legal process. (R.R. at 969a–70a.)

Concerning the intentional interference claim, Orange Stones averred that it has "contracts with Managed Care Organizations and County and State Agencies regarding services it provides to individuals with drug and alcohol dependencies." (R.R. at 967a.) Orange Stones asserted that "[b]y publicly posting the property with the [Enforcement Notice] and, by filing the false and improper complaint, Defendants interfered with these contracts as well as impeded [Orange Stones] from fulfilling its obligations to third parties under those contracts." (R.R. at 967a.)

Orange Stones alleged that all actions undertaken by Defendants were outrageous, willful, malicious, and without legal justification and that as a result, Orange Stones has suffered consequential damages, including attorneys' fees, legal costs, and harm to its business reputation. (R.R. at 968a.)

On January 14, 2013, Defendants filed preliminary objections to Orange Stones' second amended complaint. Defendants asserted that Orange Stones' three claims were legally insufficient (demurrer) and were barred under the governmental immunity provisions of sections 8541 and 8542 of the Judicial Code, 42 Pa.C.S. §§ 8541–8542,[2] commonly referred to as

---

2. These sections provide:

> § 8541. Governmental immunity generally.
> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.
> 42 Pa.C.S. § 8541.
> § 8542. Exceptions to governmental immunity.

> (a) Liability imposed.—A local agency shall be liable for damages on account of an injury to a person or property within the limits set forth in this subchapter if both of the following conditions are satisfied and the injury occurs as a result of one of the acts set forth in subsection (b):
> (1) The damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available a defense under section 8541 (relating to governmental immunity generally) or sec-

the Political Subdivision Tort Claims Act (Tort Claims Act). Defendants further asserted that Orange Stones' claims against Lachat were barred under the doctrine of high public official immunity. (R.R. at 1255a–84a.)

In its response to Defendants' preliminary objections, Orange Stones contended that the second amended complaint stated viable causes of action for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations. (R.R. at 1599a–1605a.) Orange Stones also contended that Defendants improperly raised immunity defenses by way of preliminary objections which, according to Orange Stones, must be raised as new matter in a responsive pleading. (R.R. at 1605a–06a.)

Finally, Orange Stones maintained that Lachat is not shielded with governmental/official immunity under section 8550 of the Tort Claims Act [3] because he was acting as an employee of the City and committed willful misconduct and/or intentional torts. Orange Stones further argued that Lachat is not entitled to high public official immunity because he does not engage in policy-making functions. (R.R. at 1607a–09a.)

By order dated February 19, 2013, the trial court granted Defendants' preliminary objections and dismissed Orange Stones' second amended complaint with prejudice.[4] In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that Orange Stones failed to state a claim for wrongful use of civil process. In doing so, the trial court found that the attachments to Orange Stones' complaint demonstrate that Defendants relied on depositions from several witnesses, taken from May through August 2011, to determine that Orange Stones was still violating the Enforcement Notice before filing the complaint with the MDJ, and that Orange Stones failed to aver sufficient facts to substantiate its bald allegations as to Defendants' malicious intentions. (Trial court op. at 5–6.)

---

tion 8546 (relating to defense of official immunity); and

(2) The injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

42 Pa.C.S. § 8542(a)(1)-(2). Subsection (b) to section 8542 states that a local agency may be liable for negligent acts with respect to the following eight categories: (1) Vehicle liability; (2) Care, custody or control of personal property; (3) Real property; (4) Trees, traffic controls and street lighting; (5) Utility service facilities; (6) Streets; (7) Sidewalks; (8) Care, custody or control of animals. 42 Pa.C.S. § 8542(b)(1)-(8).

3. This proviso states:
§ 8550. Willful misconduct.
In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550. In addition, section 8545 provides, in pertinent part, that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency...." 42 Pa.C.S. § 8545.

4. In this order, the trial court noted that "[Orange Stones] has failed to appear for argument both this date [i.e., date of the argument on the preliminary objections] and at [a] December hearing." (R.R. at 1612a.)

The trial court further concluded that Orange Stones failed to state a claim for intentional interference with contractual relations. Specifically, the trial court determined that Orange Stones did not plead any specific contracts, and Defendants were justified in filing the complaint on the ground that they "intended to have [Orange Stones] comply with a zoning decision." (Trial court op. at 6–7.) In addressing Orange Stones' claim for abuse of process, the trial court concluded that this claim failed as a matter of law on the basis that it rested on "bald allegations;" Orange Stones did not offer "proof of a definitive act or threat that the cause of action at issue did not authorize;" and "[t]he purpose of the zoning action was to have Orange Stones comply with the [Enforcement] [O]rder." (Trial court op. at 8.)[5]

In addition, the trial court concluded that the City enjoyed governmental immunity under the Tort Claims Act because Orange Stones' entire complaint was based on intentional, wrongful misconduct as opposed to negligent acts. (Trial court op. at 8.) The trial court also concluded that Lac-

hat was entitled to official immunity under section 8545 of the Tort Claims Act[6] because he was employed by the City as an assistant solicitor. (Trial court op. at 8–9.)

■ Orange Stones now appeals to this Court.[7]

## II. Discussion

### A. Raising Governmental Immunity during Preliminary Objections

■ Initially, Orange Stones contends that Defendants improperly raised the governmental immunity defense in their preliminary objections. Orange Stones claims that it objected to this defense in its response to the preliminary objections on the ground that the defense should have been raised as an affirmative defense in an answer and new matter. Therefore, according to Orange Stones, the trial court was not permitted to address Defendants' defense of governmental immunity.

■ Pa.R.C.P. No. 1030(3) provides that immunity from suit is an affirmative defense that must be raised in a responsive pleading under the heading of "new

5. In its opinion, the trial court also stated that under a local rule of court, B.R.C.P. 211.5(c), it could have dismissed Orange Stones' complaint "solely" due to Orange Stones' failure to attend oral argument by deeming Orange Stones' arguments as "abandoned." (Trial court op. at 4.) Due to our disposition, we need not determine whether this ground can serve as an independent basis for affirmance.

6. This section states:
§ 8545. Official liability generally.
An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.
42 Pa.C.S. § 8545.

7. In reviewing preliminary objections in the nature of a demurrer, all material facts

averred in the complaint, and all reasonable inferences that can be drawn from them, are admitted as true. *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 244, 465 A.2d 1231, 1232 (1983); *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 914 A.2d 477, 479 n. 2 (Pa.Cmwlth. 2007), *aff'd* 603 Pa. 452, 985 A.2d 678 (2009). However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Portalatin v. Department of Corrections*, 979 A.2d 944, 947 (Pa.Cmwlth.2009). Ultimately, "[t]he question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it." *Vattimo*, 502 Pa. at 244, 465 A.2d at 1232–33 (citations omitted).

matter." *Id.* However, this Court has created limited exceptions to this rule. First, a party may raise the affirmative defense of immunity as a preliminary objection where it is clearly applicable on the face of the complaint; that is, that a cause of action is made against a governmental body and it is apparent on the face of the pleading that the cause of action does not fall within any of the exceptions to governmental immunity. *Wurth v. City of Philadelphia,* 136 Pa.Cmwlth. 629, 584 A.2d 403, 407 (1990) (*en banc*). Second, where a party erroneously asserts an immunity defense in a preliminary objection, the failure of the opposing party to file a preliminary objection to the defective preliminary objection in the nature of a motion to strike for lack of conformity to law waives the procedural defect and allows the trial court to rule on the immunity defense. *Id.; see Gallagher v. City of Philadelphia,* 142 Pa. Cmwlth. 487, 597 A.2d 747, 750 (1991).

Here, it is apparent from the face of Orange Stones' complaint that the defense of governmental immunity is applicable and that no exception applies. Therefore, the defense of governmental immunity was properly raised by a preliminary objection in this case. Accordingly, we conclude that the trial court did not abuse its discretion in determining whether governmental immunity bars Orange Stones' claims. *Wurth,* 584 A.2d at 407. We note that, had the Defendants not been permitted to raise the governmental immunity defense in its preliminary objections, Orange Stones would have needed to file its own preliminary objections to object. However, although Orange Stones objected to the immunity defense in its *response* to the preliminary objections, Orange Stones did not properly object by filing its own *preliminary objection* to strike Defendants' preliminary objection and the immunity defense.

### B. Orange Stones' Claims against the City

Orange Stones does not contend that its claims against the City for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations survive the defense of governmental immunity. It is well-settled that where a plaintiff has averred willful misconduct on the part of local agency employees, section 8542(a)(2) of the Tort Claims Act, 42 Pa.C.S. § 8542(a)(2), bars recovery from the local agency because liability may be imposed on a local agency only for negligent acts. *City of Philadelphia v. Glim,* 149 Pa.Cmwlth. 491, 613 A.2d 613, 617 (1992); *City of Philadelphia v. Brown,* 152 Pa.Cmwlth. 343, 618 A.2d 1236, 1238–39 (1992). In addition, section 8550 of the Tort Claims Act, 42 Pa.C.S. § 8550, does not create an exception to section 8542(a)(2), and, as a result, a local agency may not be held liable for the willful misconduct of its employees. *Glim,* 613 A.2d at 617; *Brown,* 618 A.2d at 1238–39. In order to overcome the defense of governmental immunity, a plaintiff's claims against a local agency must sound in negligence and must fall within one of the eight enumerated exceptions to local agency immunity set forth in section 8542(b) of the Tort Claims Act, 42 Pa.C.S. § 8542(b). *Glim,* 613 A.2d at 616–17.

Here, regardless of how Orange Stones' claims are characterized, as either sounding in intentional, willful misconduct or negligence, its claims against the City are barred by governmental immunity. Under the Tort Claims Act, the City cannot be held liable for intentional torts, and Orange Stones' claims for wrongful use of civil proceedings, abuse of process, and intentional interference with contractual relations do not otherwise fit within a delineated exception to governmental immunity for negligence claims. Therefore, we

conclude that the trial court properly granted the City's preliminary objection on the basis of governmental immunity and did not err in dismissing all of Orange Stones' claims against the City.

### C. Orange Stones' Claims against Lachat

#### 1. Governmental Immunity— Willful Misconduct

■ Orange Stones is correct, and Defendants do not dispute, that governmental immunity will not bar claims against Lachat where his actions constituted willful misconduct. Section 8550 of the Tort Claims Act provides that immunity does not apply where it is judicially determined that the act of the employee causing the injury constituted a crime, actual fraud, actual malice, or willful misconduct. 42 Pa.C.S. § 8550; *R.H.S. v. Allegheny County Department of Human Services,* 936 A.2d 1218, 1230 (Pa.Cmwlth.2007); *Simmons v. Township of Moon,* 144 Pa. Cmwlth. 198, 601 A.2d 425, 429 (1991).

■ For purposes of section 8550, "willful misconduct" is construed to mean "willful misconduct aforethought" and is synonymous with "intentional tort." *R.H.S.,* 936 A.2d at 1230. More specifically, willful misconduct occurs when the actor "desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue." *Id.* However, if the claim against an employee does not rise to the level of willful misconduct, but, instead, is based on negligence, then the employee enjoys governmental immunity to the same extent as a local agency, and the negligence claim must meet one of the eight enumerated exceptions in section 8542(b) for governmental immunity to be inapplicable. 42 Pa.C.S. § 8545; *Lancie v. Giles,* 132 Pa.Cmwlth. 255, 572 A.2d 827, 830 (1990).

Here, the trial court erred in concluding that Lachat was entitled to blanket immunity under the Tort Claims Act, without considering whether Orange Stones' alleged torts evidenced willful misconduct. However, for the reasons discussed below, we conclude that the averments in Orange Stones' complaint are insufficient to establish that Lachat committed an intentional tort and/or willful misconduct; therefore, the trial court's error is harmless. *See Guy M. Cooper, Inc. v. E. Penn School District,* 903 A.2d 608, 618 n. 9 (Pa. Cmwlth.2006) ("We may affirm a trial court's order based on a different rationale if the basis for our decision is clear on the record.").

#### 2. Intentional Torts

Orange Stones' chief argument is that it properly pled viable intentional torts against Lachat. With regard to the wrongful use of civil proceedings claim, Orange Stones asserts that Defendants filed their complaint without probable cause based solely upon a meritless Enforcement Order and failed to investigate the allegations of the Enforcement Order before filing the complaint before the MDJ. From this premise, Orange Stones posits that Lachat's actions constituted "willful misconduct" and the complaint was filed "for a wrongful purpose, with malice and with intent to coerce [Orange Stones] into abandoning its use of the property." (*Id.* at 15.) Orange Stones makes the same or substantially similar arguments in support of its abuse of process and tortious interference claims.

##### a. Wrongful use of civil proceedings

■ "Wrongful use of process, which is now defined by statute at 42 Pa.C.S. § 8351, involves the initiation of process without probable cause." *Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 644 A.2d 188, 191 (1994). "To prevail

in an action for wrongful use of process, the plaintiff must show that the defendant maliciously instituted proceedings, that the defendant lacked probable cause to institute the proceedings and that the proceedings terminated in favor of the plaintiff."
*Id.*

Commonly referred to as the Dragonetti Act, section 8351 of the Judicial Code states:

§ 8351. Wrongful use of civil proceedings

(a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required.—The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

*Id.*

An attorney of record has probable cause if the attorney believes in "good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party." Section 8352(3) of the Judicial Code, 42 Pa.C.S. § 8352(3).

An attorney who initiates a civil proceeding on behalf of his client[,] . . . even if he has no probable cause and is convinced that his client's claim is un-founded, . . . is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

*Hart v. O'Malley,* 436 Pa.Super. 151, 647 A.2d 542, 550 (1994) (*Hart I* ).

### b. Abuse of process

 An action for abuse of process differs from an action for wrongful use of civil proceedings. *Rosen v. American Bank of Rolla,* 426 Pa.Super. 376, 627 A.2d 190, 192 (1993).

The common law tort of abuse of process involves the perversion of legal process after it has begun in order to achieve a result for which the process was not intended. Abuse of process has been described by the Supreme Court as the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." In order to state a cause of action for abuse of process it must be alleged that the defendant used a legal process to accomplish a purpose for which the process was not designed. The classic example is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon. It is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive. Rather, there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to

coerce or compel the plaintiff to take some collateral action.

*Al Hamilton Contracting Co.,* 644 A.2d at 191–92 (citations omitted).

#### c. Intentional interference with contractual relations

■■■■ "To set forth a legally sufficient cause of action for intentional interference with contractual or prospective contractual relations, four elements must be pled: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1987). "It must be emphasized that [this] tort ... is an intentional one: the actor is acting as he does for the purpose of causing harm to the plaintiff.... The wrong ordinarily requires conduct intended to interrupt negotiations or prevent the consummation of a contract." *Glenn v. Point Park College,* 441 Pa. 474, 481, 272 A.2d 895, 899 (1971).

#### d. Law regarding pleading

■■■ "Blind suspicions and unsupported accusations simply do not state a cause of action pursuant to any theory of tort recovery. Even our present liberalized system of pleading requires that the material facts upon which a cause of action is premised be pled with sufficient specificity so as to set forth the prima facie elements of the tort or torts alleged." *Feingold v. Hill,* 360 Pa.Super. 539, 521 A.2d 33, 38 (1987). Although Pa.R. C.P. No. 1019(b) allows malice, intent, knowledge, and other conditions of mind to be averred generally, the Rule does not eliminate the requirement that a plaintiff plead sufficient factual circumstances that give rise to an inference as to the actor's state of mind. 2 Goodrich Amram 2d § 1019(b):11 (2012); *Hart I,* 647 A.2d at 552.

■■■ Similarly, while Pa.R.C.P. No. 1019(b) permits general averments as to state of mind, if the complaint contains sufficient material facts that operate to disprove such averments, the allegations as to state of mind cannot stand, and the cause of action must fail when the particular state of mind is a material element of the claim. *Dietrich Indus., Inc. v. Abrams,* 309 Pa.Super. 202, 455 A.2d 119, 124 (1982). "In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred." *Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania,* 936 A.2d 111, 113 (Pa.Super.2007).

#### e. Analysis

■■■ Here, the attachments, coupled with the averments in the complaint, reflect that William D. Frymoyer, the City's Zoning Administrator, signed and verified the complaint against Orange Stones before the MDJ, and relied on the Enforcement Notice to initiate the proceeding. Frymoyer consulted with Lachat with respect to the preparation of the complaint, and Lachat filed a letter withdrawing the City's complaint after Orange Stones filed a cross-complaint. (R.R. at 243a–47a, 964a, 973a–75a; 1236a.)

This is the full extent of Lachat's role in this case. Orange Stones generally alleges that Lachat acted "maliciously," "without probable cause," "with the specific intent

to harm [Orange Stones] by filing an entirely false claim against it," and "intended to impede [Orange Stones'] contractual relations." (R.R. at 964a–95a.)

In and of themselves, these averments are markedly insufficient to establish that Lachat possessed the wrongful intent necessary to overcome the official/governmental immunity conferred to him by the Tort Claims Act. *See Geary v. United States Steel Corporation,* 456 Pa. 171, 178, 319 A.2d 174, 178 (1974) (reiterating that "a bare recitation that defendant had acted 'intentionally, wrongfully, maliciously, fraudulently, deceitfully and without justification' did not satisfy the specific intent requirement.").

Moreover, the alleged factual basis for Orange Stones' bald assertions as to Lachat's state of mind and his acts of wrongdoing is largely refuted and/or undermined by the specific, material facts set forth in the attachments to Orange Stones' complaint. Accepting the facts as averred in the complaint and clarified in the attached exhibits as true for purposes of demurrer, they are legally inadequate to support an inference that Lachat acted with wrongful intent.

For example, Orange Stones avers that the Enforcement Notice was technically "defective" pursuant to certain provisions of the ordinance. (R.R. at 960a, 962a.) However, an examination of the ordinance and the Enforcement Notice (Exhibits B and C) demonstrates otherwise and prove that, at the very least, the Enforcement Notice substantially complied—if not fully complied—with the ordinance. Specifically, the Enforcement Notice listed Orange Stones as the record owner of the property; explained the specific violations with citations to the ordinance; informed Orange Stones that business occupancy must cease immediately; and forewarned Orange Stones of the penalties that may

ensue if the situation is not remedied. (R.R. at 976a–77a; 992a–93a.)

Further, although Orange Stones baldly alleges that the City's Zoning Administrator "unlawfully refused" to accept Orange Stones' appeal from the Enforcement Notice, (R.R. at 960a–61a), a letter written from Orange Stones' counsel (Exhibit D) undermines this assertion. According to the letter, then-Zoning Administrator Cynthia Sopka did not accept the appeal because it did not include all of the required information and also because she believed, albeit mistakenly, that the appeal was an application for a variance. (R.R. at 1219a.) In any event, Sopka was not joined as a party-defendant in this action, and there are no allegations that Lachat directed Sopka's conduct, had actual knowledge of her conduct, or that he personally impeded Orange Stones' attempt to appeal the Enforcement Notice.

And, contrary to the suggestion made in the complaint, there was nothing inherently devious with the City seeking a preliminary injunction in the trial court to enforce the Enforcement Notice before the time to appeal had expired. "Section 617 of the Pennsylvania Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10617, expressly empowers municipalities to seek equitable relief to restrain violations of their zoning ordinances ... [and] this power is not limited by the power of the municipality to impose penalties for violations." *Board of Supervisors of West Brandywine Township v. Matlack,* 38 Pa.Cmwlth. 366, 394 A.2d 639, 641 (1978). *See Tinicum Township v. Delaware Valley Concrete, Inc.,* 812 A.2d 758, 760 (Pa.Cmwlth.2002). If the preliminary injunction action in the trial court had the effect, as Orange Stones alleges, of improperly depriving the ZHB from hearing Orange Stones' appeal, Orange Stones could have asserted the defense of an ade-

quate administrative remedy and/or petitioned for mandamus to compel a hearing before the ZHB. Regardless, the simple act of the City, and presumably Lachat, in filing for a preliminary injunction does not indicate malicious conduct, nor does it create an inference of improper motive.

Finally, Orange Stones' averment that the City's complaint was "improper" on the ground that the doctrine of laches bars enforcement, (R.R. at 962a), is a conclusion of law that need not be accepted as true for purposes of demurrer. *Portalatin v. Department of Corrections*, 979 A.2d 944, 947 (Pa.Cmwlth.2009). Instead, an attached copy of the City's complaint before the MDJ (Exhibit A) establishes that the complaint was based upon deposition testimony from witnesses who stated that they personally observed Orange Stones violate the Enforcement Notice from May to August 2011 by operating a business and transporting business equipment. (R.R. at 975a.)

Standing alone, the fact that these witnesses observed Orange Stones conducting business activity is inadequate to prove the applicability of laches, let alone demonstrate that Lachat knew of the ongoing violations prior to May 2011, acquiesced in the violations, and/or that Orange Stones suffered prejudice as a result of any delay. *See Colelli v. Zoning Board of Adjustment of the City of Pittsburgh*, 131 Pa.Cmwlth. 615, 571 A.2d 533, 535 (1990) (rejecting laches argument because "the operation of the business has not been such an obvious physical violation ... to put city zoning authorities on notice of the violation."). Without factual allegations to demonstrate that the complaint was obviously barred by

laches, Orange Stones has failed to plead facts establishing wrongful or improper intent on the part of Lachat. Indeed, the fact that the City's complaint before the MDJ was based on deposition testimony from multiple witnesses lends strong support to the notion that Lachat had a reasonable basis to permit Frymoyer to institute civil enforcement proceedings.

As referenced above, essential elements of the torts of wrongful use of civil proceedings (if not commenced under a theory of gross negligence), abuse of process, and intentional interference are malicious intent to institute civil proceedings for an improper purpose and wrongful intent to obstruct contractual relations. Although Orange Stones' complaint is replete with generic averments as to Lachat's malicious intent and legal opinions as to his wrongdoing, the material factual matter contained in the attached exhibits is insufficient to establish "willful misconduct aforethought." *R.H.S.*, 936 A.2d at 1230.

Giving Orange Stones the benefit of any and all inferences from the averred facts, the complaint and the accompanying exhibits demonstrate, at best, that a procedural irregularity occurred during the appeal process; the Enforcement Notice may have contained insignificant technical defects; and the City's complaint before the MDJ arguably sought more damages than those permitted by the ordinance.[8] As a result, Orange Stones has failed to plead sufficient facts to support an inference that Lachat filed a baseless civil proceeding, much less knowingly and without probable cause, and that it was his intentional and conscious objective to do so in order to interfere with Orange Stones' contractual

---

8. The City's complaint sought civil penalties for each day of the alleged violation. (R.R. at 962a). The pertinent provision of the ordinance states that in an enforcement proceeding, a defendant that is found liable shall pay a judgment of not more than $500, but then states, in a somewhat ambiguous manner, that each day that a violation continues constitutes a separate violation, apparently after a judgment is entered. (R.R. at 993a.)

relations and effectively put Orange Stones out of business.

Moreover, assuming, without deciding, that Orange Stones alleged sufficient facts to demonstrate that Lachat was grossly negligent in failing to properly investigate the City's complaint, Orange Stones at most stated a cognizable claim for wrongful use of civil proceedings. *See Hart v. O'Malley,* 781 A.2d 1211, 1218 (Pa.Super.2001) (*Hart II*) (explaining that an action for wrongful use of civil proceedings does not require a *prima facie* showing of actual malice but may be maintained where the defendant acted in a grossly negligent manner).

However, even if this were the case, a wrongful use of civil proceeding claim grounded in a negligence theory does not evince intentional misconduct. *King v. Breach,* 115 Pa.Cmwlth. 355, 540 A.2d 976 (1988) (concluding that section 8550 "does not abolish official immunity for such acts if they constitute merely gross negligence."). Consequently, a wrongful use of civil proceeding claim, based upon a negligence theory, must meet one of the enumerated exceptions in section 8542(b) for negligent acts in order to strip Lachat of governmental/official immunity. *Lancie,* 572 A.2d at 830. A claim for wrongful use of civil proceedings does not fall within a delineated exception and, accordingly, it is barred under the Tort Claims Act. Therefore, we conclude, albeit through alternative reasoning, that the trial court did not err in dismissing Orange Stones' claims against Lachat.

### D. Dismissal of First Amended Complaint

 Finally, Orange Stones argues that the language employed by the trial court in its order granting Defendants' preliminary objections to the first amended complaint demonstrates that the trial court made a factual determination, specifically by opining that Orange Stones did not "legitimately" plead facts.

Here, the trial court granted Defendants' preliminary objections and dismissed Orange Stones' first amended complaint "not with prejudice if Orange Stones is legitimately able to file a 2nd amended complaint based on facts supporting [its] allegations. [Orange Stones] may file such action within 20 days; otherwise, the motion to dismiss with prejudice will be granted." (R.R. at 957a.) Contrary to Orange Stones' contention, the trial court did not engage in fact-finding. Rather, the trial court granted Defendants' preliminary objections to the first amended complaint and provided Orange Stones with the opportunity to file a second amended complaint to address the deficiencies listed in Defendants' preliminary objections and plead sufficient facts in support of its claims. Thereafter, Orange Stones filed a second amended complaint. Upon review, we find no error on the part of the trial court.

### III. Conclusion

For the above-stated reasons, we conclude that the trial court properly considered Defendants' affirmative defense of governmental immunity; that Orange Stones' claims against the City are barred by governmental immunity; that Orange Stones' claims against Lachat do not rise to the level of willful misconduct and/or do not fit within an exception for governmental/official immunity; and finally, that the trial court's order granting Defendants' preliminary objections to Orange Stones' first amended complaint did not contain any discernible legal error.

Accordingly, we affirm.

### ORDER

AND NOW, this 21st day of March, 2014, the February 19, 2013 order of the

Court of Common Pleas of Berks County is affirmed.